That's Contant v. AMA Capital All right, Mr. Luskin, you have ten minutes, but you reserve two minutes for rebuttal. Good morning, Your Honors. Scott Luskin on behalf of AMA. May it please the Court. In defiance of due process and basic contract principles Wait, but let's start right there. Due process. Did you make a due process argument in the District Court? Because I must have missed it. Your Honor, we didn't specifically say the words due process, but the argument is the same here as it was below. All you said below is that you were contesting the class administrator's rejection. You took it to Judge Schofield. She basically agreed with them. And then you asked for a motion for reconsideration. I didn't see a due process argument. So, Your Honor, the concept of due process here is whether or not we were given the proper evidentiary standard to be used. It's the exact same argument we made below. This is the type of claim we wanted to have adjudicated, and we weren't given the process that was due. Well, why is that a due process claim? That's just a Garden-Variety Error of Law. It's not a constitutional problem. Well, Your Honor, I think that we have to have a process here set up for Rule 23, which is incorporated, as it's discussed in the commentary, where class members are given a very specific and obtainable process to have their claims administered in hand. Right. You're arguing that they didn't comply. It seems to me what your argument is that they didn't comply with the process that was set up in the settlement. But I didn't see anything in your Memorandum of Law or in any of your submissions to the District Court where you're making due process arguments or you're citing due process cases. Did you cite any? No, we didn't, Your Honor. Why is it that way, then? Well, Your Honor, as the Supreme Court has said, and ye and this Court, I believe, and McCoy has said, as long as you make the same type of argument, the argument that we presented was the proper evidentiary standard needed to be applied in this particular instance, you can cite additional authority, such as the due process arguments that we've made, on the same point. So challenging compliance with the settlement agreement is the same as making a due process argument? I think so, Your Honor. Okay. Well, I would say let's move on to the specific contentions you have about how the settlement agreement was not complied with. Sure, Your Honor. So I think one of the main pieces that we want to discuss here today is what is a detailed transaction record and how do we determine how that works out and how it works out for AMA's claims? So the settlement claim form, which is incorporated into the settlement by reference, has only a few requirements. One is that you provide your own detailed transaction records reflecting the transactions with RFIDs or other eligible entities. Two, you also need to fill out a claim spreadsheet. And then three, you need to sign under penalty of perjury that you did, in fact, make those trades. And AMA did that here. By the July 16th deadline that was given by class counsel, AMA submitted the claim spreadsheet, which nobody can test. Nobody can test that they said that they made the trades. The real issue is what is a detailed transaction statement? And the claim form gives two examples, account statements and transaction confirmations. And with the July 16th submission, AMA provided for the vennies that are at issue here, IB, FC Stone, Alfari, and FXCM statements from those vennies. For each transaction? Not for each transaction, Your Honor. There were at least 300,000 trades that were covered in those statements. The IB statements were called activity statements. Other folks, other claimants were able to manage this, right? Well, Your Honor, out of 11- They didn't submit the things you submitted and get their claims approved, did they? Well, it's unclear what actually happened with any other claimant. Class counsel hasn't shown its work for anything here about what was submitted for anybody, anybody else, or how there's any comparison. All we can see here is that there were inconsistencies even within our own claim. But the concept here is there were 11,000 claimants out of, I believe, over 100,000 potential class members. Only 100 were option two. So I don't know what happened with those other 100 or so, but with us, we didn't get a consistent or fair or substantiated process. For those 300,000- Why do you think you were entitled to get paid for trades in respect of which you didn't submit the underlying debt? Well, Your Honor, I think- Why wasn't it within class counsel or the settlement administrator's discretion to not credit you with those? Well, while the settlement does give them discretion, I think, A, that has to be handled in good faith, and, B, exemplars should be good enough here, Your Honor. So you say, but isn't your burden somewhat different here? Your burden here is to say they have to be because those folks have discretion. Well, again, they do have discretion, but I think, as you can see in the Forex case, which is the big direct settlement case, under the same judge, in that claim process, exemplars were perfectly fine. So it's not that there's- that class counsel and the claims administrator, in their discretion, seem acceptable. It doesn't say, as long as it's the same as Forex. Well, sure, Your Honor, but, again, when we were emailing with class counsel, class counsel said, please provide exemplars, which we did by July 16th. And then when we got the claim assessment back in August that said, nope, you need one-for-one statements, we did our very best to provide them within the 20 days that the claim assessment gave us to do, which is confirmed by the settlement itself, and 98 percent of the trades that were at issue at these venues were documented by them. We have trade statements. We got emails, which we provided from Alpari. So that's your- I mean, I think what is the bulk of your argument on appeal seems to be that the contest period allows you, then, to cure problems with your proof of claims. Sure, that's right. That seems to be hard to square with the language. I mean, the remedy and cure provision refers to the pre-rejection period, that prior to rejecting, the claims administrator and, I guess, class counsel, have to give the claimant an opportunity to remedy and cure the problem. After the rejection, then there's an opportunity to contest. And contest doesn't mean that you get to, then, cure. It means you get to articulate why the claims administrator is wrong and provide documents to show that it is wrong. And if the reason for the rejection is that you didn't provide sufficient documentation, adding new and better documentation is not substantiating why the rejection was wrong, right? I don't think that's quite correct, Your Honor. I think, first of all, that's back up to how the process is set up. The claim administrator and only the claim administrator in the settlement. You, I think, bought into the same concept that class counsel is arguing, that class counsel and the claim administrator can be interchanged. They can't. The settlement defines them separately. And the claim administrator's only interaction with us was the claim assessment of August 13th, so that we should have the opportunity to cure based on that claim assessment, which we did. But there was a rejection, right? Well, there was no note. The 13th letter is rejection. It doesn't purport to be notice for the purposes of the cure provision, right? I think it is, they call it a final determination. I guess you're right. It may be called a rejection. But there would have been no prior notice and cure then by the claim administrator. What about, I'm looking at an e-mail. These are sealed, so I'm not going to read it directly. But it's CA35, in which there's a discussion, which is with AMA's representative and class counsel, with, it's my understanding, the claims administrator's copies, that says, what you've given us is not enough. We need, quote, detailed transactional records. How is that not sufficient notice for you to know well before you got to the August rejection letter that you needed detailed transactional records more than you had thus far been willing or able to produce? So, again, Your Honor, I think this is an e-mail where the claim administrator was merely copied on it. Class counsel is supposed to be, as the notice says, our lawyer helping us out, which they said they would do in the underlying, or prior emails. And, again, this is not an issue where we're getting a specific, here's a list of the problems with your claim, and these are the things you can cure. This is just a generic concept, and we were trying to figure out what exactly the detailed transactional records needed to be. But even so, by July 16th, we provided transactional records that identify the exact information that class counsel had asked for, for at least 300,000 more trades than we got accepted. Those ones have the date, the pair, the time, the price, exactly the same as the FC Stone statements that were accepted and the interbank statements that were accepted. Class counsel has never explained why those particular records, which are like El Pari, for example, provided an e-mail to my clients for a monthly statement that had a giant spreadsheet on it identifying every trade on there. But for some reason, those just weren't reviewed or accepted or anything else. There's no real explanation. So even if this court doesn't want to give us the extra time, there's still several hundred thousand trades that should be reviewed and given as valid to my clients. And is the standard of review for that abuse of discretion? You've argued that everything, I think you've argued that everything here is subject to de novo review. That doesn't sound right to me. So, Your Honor, I think there's some issues here where we've got the standard of what evidence should be permitted. That would be de novo. The reading of the settlement agreement should be de novo. Why is that de novo if the settlement agreement expressly says it's in the discretion of class counsel and the claims administrator what documentation is required? Because I think there's no fact finding or analysis that was given here that would give the good faith or anything else. The court, I guess as well that I didn't mention earlier, can't delegate completely to class counsel its job to protect unnamed class members. And it did so here. But it just merely accepted what class counsel had said without any analysis, without any explanation. It just said because class counsel says that there's no detailed transaction records, claim denied. But it didn't go through and analyze that exactly how it should. So, again, this could be, there's not the fact finding here that would get you to the abuse of discretion standard that would apply because the court delegated to class counsel its own duties. Well, look, generally this is not the first time we've ever seen a class settlement case. These things do come up and the law is pretty clear that the discretion of the district court and the claims administrator is something that has teeth. But I think your argument, maybe your best argument, is that Judge Schofield's orders are pretty lean. They just basically announce which of the stated bases for rejection have been accepted by the court. Timeliness, rejected. Failure to provide adequate documentation, granted. And then also in the motion for reconsideration, sort of a fallback on one that hadn't been in their prior order, which was with respect to whether the failure to provide duplicate transactions was fatal. So what should she have done? What should this have looked like, I guess is what I'm trying to figure out from you. Sure, Your Honor. For the judge to have done what was necessary under the settlement agreement. Sure, Your Honor. The judge should have gone through the filings as set up such that she could have reviewed, I guess for the detailed transaction piece, she could have reviewed the actual records, which she chose not to do, to determine whether or not they meet the account statements or trade confirmations, which for some reason nobody has ever done. I don't even know if class counsel has done it. So it's your position that the district judge should have gone through all of these trade records? I'm not saying she should have gone through all of them. You're right, Your Honor. Let me qualify. She should have reviewed them? She could have reviewed at least the examples that we provided to determine this type of document is, in fact, a detailed transaction record. That's really all we're looking for here. The documents are all very similar. She just needed to determine if this is, in fact, the transaction record that we're looking for. And I think that's what's covered here, and that she didn't do that. She refused to do so at the motion for reconsideration stage, and prior to that it wasn't made an issue. But when you say she refused to do so, what's your basis for saying she refused to do so? In the order on reconsideration, the judge said, I don't need to look at these documents now. She said she's not looking at the new stuff that you produced. Sure. It's not clear to me she said she wasn't going to look at documents that were submitted as part of the proof of claim. So the issue was, Your Honor, that class counsel, and I'm way over my time, so I'm happy to keep going as long as you want. The issue is that class counsel didn't raise the lack of anything other than a one-for-one statement issue when it framed the issues originally. So if you look in its opening brief and its reply brief, that's the letters. You're looking at the rejection letter, which is the August 13th letter, right? That's where they state what the basis for the denial is, right? It does state some of the basis for denial in there. But the concept that they come up with really only comes up in the supplemental brief that class counsel provides that we weren't given a chance to oppose. In there, that's where they finally say, nope, these are just not the right types of records for some reason, and we still don't know what that is. But the records that were provided are exactly the same as the type that were accepted for F.C. Stone and Interbank. If you look, there's a group of ‑‑ we provided an exemplar that shows that they all have the same date, pairs, times, prices, et cetera. There's no reason to think that those are not detailed transaction records when the other ones that were accepted were. Thank you. Why don't we stop you there? You've got two minutes for rebuttal. We'll now hear from Mr. D'Angelo. Am I pronouncing that correctly? You are, Your Honor. All right. Thank you. Good morning. Michael D'Angelo for the appellee. May it please the Court. It's the appellee's position, Your Honors, that the district court did not err. And this appeal, however characterized, really arises out of a dispute over a single claim determination. Did you say a single claim determination? What do you mean? That is the determination of the appellant's claim. All right. But that means that August 13th, there's a letter that rejects their claim or parts of it. It doesn't reject all of their claim. It's a 16‑page, single‑spaced letter, right? That's correct. So that is what then triggers the contest period, right? Correct, Your Honor. And that then spawns two letters from the appellants. And those are pretty detailed, too. The first one is just a couple of pages. But the second one is a dozen pages or so, right? That's correct, Your Honor. So, no, I'm wrong. It's 15 single‑spaced pages. And then you guys respond. And it goes back and forth. And then the district court's order is pretty skinny. It's three pages long, mostly whereas clauses. And then just an announcement as to which of the stated reasons, which the court characterized as four reasons for denying the claim, the court was accepted. Right. So is that what you expected? Is that typical for, you know, a contest of a denial of a settlement claim? It is in my experience, Your Honor, because this type of challenge, first of all, is exceedingly rare. It doesn't happen much because it's not supposed to be adversarial. Correct. And what I would note, Your Honor, is, and I will say, just in case I'm reading you correctly, from the position of class counsel, the process was not adversarial. Our job is to call with the claims administrator, as we see it, as fiduciaries of the settlement fund. That's all fine. The point is you rejected, they contested, and then it goes to the district judge. That is what the settlement agreement calls for. So what does the district judge have to do? Just act like a jury and say up or down? Or does the district court have to do more? Well, I'd like to refer to what the district court did. So I agree with your characterization, Your Honor, that the district court's orders were lean. But if what precipitated those orders was rather extensive briefing, which is cited throughout the whereas clauses, right, where the court ordered a series of briefing. Okay. But there's a lot of briefing. And one of the things in your letter, I guess it's your letter. Yep. This is CA4. This is your letter of September 23rd. You state in response to Mr. Luskin's letter that the transactions AMA disputes do not meet the settlement class definition. And that really focuses on whether or not transactions with a prime broker qualify you to be in this class, right? That particular aspect you identified, yes. What did Judge Schofield say about that? Judge Schofield did not reach that issue because there is a threshold issue. What was the threshold issue? The threshold issue is that a portion of the appellant's claim was approved and a portion was denied. The portion that was denied, the entire portion that was denied, did not have detailed transactional records. I've been racking my brain to figure out how you can say that. That might be true, but it's not obvious to me. Like what are the subsets of transactions that are adequately substantiated with documentation and which ones aren't? Because you approved some. And it's not clear to me that all the ones that were denied were denied for the reason that they didn't have adequate documentation. Some of them were simply about the fact that it's prime brokers. In your view, prime brokers means you are disqualified. Well, I would put it to you this way, Your Honor. That on the face of a transaction that was denied for which, for example, a statement or a fixed message had been provided, it was not apparent from the face of the statement or the fixed message that the transaction at issue met the settlement class definition. So one way to try to reach that determination might be to look at additional documents like a contract with a prime broker or the contract with the venue through whom the trading was taking place, and it appeared from the materials where we had it that the transactions were not qualifying because they were, for example, direct. Can I interrupt you, Mr. Dillon? Yes. And you guys shut me up if you need to. But I'm looking at the court order, and this phrase or this paragraph is repeated in virtually every one of the court's orders, that class counsel demands four reasons for denying AMA's claim, untimeliness, insufficient documentation, failure to meet the class definition, and the potential for duplicate recovery. It's not clear to me from the judge's order that she's characterizing each of these as an independent basis to deny all the transactions that were denied in this case. Is that your interpretation of it? It is. So in the November 16 order at SPA 4, the fact finding was the district court said, quote, that all of the denied transactions are, quote, denied because they lack detailed transactional records as required by the settlement. But that wasn't clear to me from the August 13th letter. It seemed to me that there were certain transactions or certain categories of transactions with, for example, certain platforms for claims involving prime brokers that were rejected not because of inadequate documentation but because of other problems. Am I wrong about that? Yes, Your Honor, because the documentation is inadequate if it doesn't demonstrate that the transaction at issue constitutes a cognizable injury. That is, that it's a direct transaction that meets all of the other settlement definition criteria. So it may be that you provided a detailed transactional record for a trade, but if that detailed transactional record doesn't demonstrate that there is a cognizable injury whereby the transaction meets the settlement class definition, you have, by definition, not provided a detailed transactional record that is sufficient to show that you're entitled to a claim. But in your August 13th letter, for certain transactions, you expressly say that they're denied because of inadequate documentation. And for others, you don't seem to. Am I wrong about that? You're not wrong about that. I don't think that phrase is used for each platform. I mean, this is broken down by venue or platform, which is not obvious to me as the most efficient way to do it. But in any event, that's how it's done. And for some of them, it says that there was insufficient documentation. And for others, it doesn't say that. Well, because, again, it goes to that distinction, Your Honor, that even in an instance where, well, let me just break it down. So they provided, the appellant provided detailed transactional records for a variety of trades. Some were accepted. So there's a significant portion of the trade that's approved. Then there are trades for which detailed transactional records were provided, but those detailed transactional records don't demonstrate that the transactions in them comply with the settlement class definition, which is what resulted in the denial. But to say that these transactions don't entitle you to part of the settlement because they involve the prime broker, strikes me as different than saying you don't have sufficient documentation. So may I use an example? Sure. So if, for example, the settlement called for the provision of a sales receipt that showed the purchase of a particular, of a widget, right? And the claimant provided a sales receipt, but the sales receipt didn't show the purchase of a widget. Essentially, what we were saying is, yes, you provided a sales receipt, but it doesn't demonstrate that you purchased a widget, right? So one of the ways that we may have figured that out is that there was a prime broker transaction, right? So I'm looking at a detailed transactional statement, and from the face of it, I can't determine that there was a widget transaction. And so there are other things that we may have looked to, like the contract or a prime broker relationship or whatever, to determine whether or not the detailed transactional statement sufficed. And that's where, as reflected in the earlier portion of the discussion with the court, class counsel exercised their discretion to make a determination about what was appropriate. All right, but again, Judge Snowfield identifies four reasons advanced by class counsel for denying the claims. Untimeliness is one. She rejects that, actually. Yes. But that would apply to all because they were all submitted at the same time. Correct. Insufficient documentation. You're suggesting today that applies to all the transactions that were rejected. Correct. Third was failure to meet the class definition, including through purchases of access to a trading platform and use of a prime broker. That applies to all the rejections. Number three? I mean, the answer has to be no, right? Standing here today for the sort of millions of transactions at issue, I don't know that I could overlay that. I think it's for a substantial portion of them. Well, I mean, it seems to me that's a distinct basis. And then the potential for duplicate recovery, that applies to all the transactions that were denied? Sort of a negative, right? That's sort of saying unless I have a list of duplicate transactions, there's no way I can know whether any of these transactions are appropriate. Correct. So we were told by the appellant that some of the transactions or transactions with certain venues were approved, submitted and approved, or conditionally approved. There were various iterations in the Forex case, right? So there were duplicates. We would be relying on the appellant to identify every- But my point is that the failure to approve would produce a list of duplicate recoveries fatal to all the transactions that were rejected by the claims administrator. Well, without the list, I think it's not possible to know. You approved some. Right. Some of the transactions were approved. Correct. And yet there was no list of duplicate recovery transactions. Right, because we were told, for example, later that transactions for some of the rejected venues were submitted for recovery in the Forex case. And in one of the appellant's submissions to the court, to the district court, after the denial, there's a discussion and a listing of some of the duplicates. You know, some of the venues for which duplicates have been submitted and approved or conditionally approved in Forex, many of which overlapped with the denial. All right. I mean, it's hard to know just what sort of scrutiny Joe Schofield gave to any of the arguments that are raised in pretty extensive briefing, including a bit about the prime broker. It seems to me that that was sort of teed up and then not resolved. Right. I believe it was resolved by operation of the fact that the transactional record didn't qualify. But why? So what would you need to establish that a transaction with a prime broker was covered here? Well, we don't. None, right? If anything that reveals it's a prime broker means it is, I think in your view, not part of the class, right? Correct. So you're characterizing that as a failure to provide sufficient documentation? No. What we're saying is that with respect to the denied transactions, the materials provided do not indicate on their face whether or not they're qualifying transactions and therefore whether. Your letters multiple times talk about how prime broker transactions are not covered. They're not part of this settlement. Right. And nowhere does the district court even address that issue. Right? That's correct. So how is this a documentation problem? Because the documentation provided does not reflect that the transaction is qualifying. All right. We'll hear from Mr. Luskin. Thank you. Thank you, Your Honors. I think the last point that you were discussing with the appellee's counsel is crucial. It gets very circular. We've decided that prime broker is now a documentation issue. We've decided that whether or not the trades meet the settlement definition is now a documentation issue. And so they just told the court, because it's our discretion, it's a documentation issue, we win. And the court just, as you've seen it very skinnily, just said, because class counsel said there's no documentation, it's rejected. And I think that's a problem, Your Honor. We've got here. It looks problematic. I mean, I will say that most of your brief is not focused on that problem. I mean, most of your brief is really insisting that you get an opportunity to cure after August 13th, it seems to me. Sure. And as I was actually preparing for argument, I wish I'd focused more on this issue. But here we are today. So I think that one thing that we get is the circular argument of what would counsel have wanted that we didn't provide, right? We provided statements that had all these documents and trades identified in them. But apparently, either the prime broker issue, which we certainly contest and think is incorrectly determined by class counsel, is one issue. And then the platform or back-to-back issue is another one. And that's where we run into this concept of they want us to prove something that class counsel said in its own motions could only be obtained via subpoena of these RFEDs that they never subpoenaed or never collected the subpoenas on. Regardless, on this back-to-back platform issue or anything else that shows that our trades meet the settlement definition, which is, again, what they're now calling a documentation issue, it's unrebutted evidence. We found an Alpari CEO's declaration explaining that trades with Alpari were back-to-back with three defendant banks. We provided press release and other information showing for FXCM that their trades are back-to-back. Our trades with them are back-to-back with banks. And for IB, it's the same thing. Their disclosures all state that they do meet the class definition. Class counsel has never shown its work, never provided any evidence showing that they don't meet it. They just continue to say, moving the goalposts, you have not met your burden. He said it again today. You have not met your burden to show that they meet the class settlement definition. That shouldn't be the class member's burden here because of the way the settlement was set up. The settlement was set up with they obtained records from only four RFEDs out of 60 that they'd subpoenaed, yet settled for them all and have not ever shown their work why any other RFED fails to meet the class definition. So it's the class counsel or claims administrator's burden to determine on their own, as opposed to bottom-up from the class potential members. It's their job to determine exactly who fits in the class and which transactions fit in the class? Well, Your Honor, so the issue here is, again, the way they settled, they'd only gotten records from four RFEDs out of the entire world. Okay. And we have shown with evidence we think that's unrebutted that they do meet the class definition. Again, there's an ALPARI declaration that explains exactly that the trades are back-to-back, unrebutted. But it remains the applying class member's job, right, to establish that their claims fall within the definitions, right? Well, on some level, yes, and on some level, no, Your Honor, because the way that the claim form says, the claim form doesn't say you need anything other than providing the transaction records, the detailed transaction records, which are account statements from the RFED, which is exactly what we provided and exactly what was accepted for FC Stone and Interbank. Those two, there was no additional documentation that we showed that they were back-to-back records or anything else, and they were accepted just fine. It's unclear why they were accepted versus others, but they were accepted just fine. The entire premise of this case, Your Honors, is that 90-plus percent of trades ended up being back-to-back with banks in the United States. That's how class counsel overcame a motion to dismiss by the defendants. So it should be, in a sense, presumed, but if not, there should be some information from the experts to show why we're wrong. We did provide evidence for each of the three entities that are at issue here, why they're back-to-back and why they do meet that class definition, and it can't just be this magic, we call it, they're not detailed transaction records, and therefore you lose. On the duplicate issue, Your Honors. Let me ask you this. What is the status of the overall class, the status of the settlement now? Have the settlement funds been disbursed to class members? No. Everything is on hold, Your Honor, while we're waiting for this appeal. So because the way it's set up is it's a pro-rata distribution. So if additional trades are validated here, then everybody's claim would change. And just briefly, I wanted to mention on the duplicate issue, there have been no actual approved claims in the 4X case. So that doesn't provide it, just submission, which class counsel originally told us, submission of indirect claims in both cases was fine. Just the mere submission shouldn't be enough to ding us on a valid trade. We've offered to withdraw them, and there's an easy process for that. They give this in a list, and all we do is provide it to 4X. Any further questions? No. We will reserve the session. Thank you. Thank you, Your Honors.